SARAH HAYNES, *alias* MIELKIE, *v.* HENRY FORNO et al., C. Y. HUTCHIN-SON, and H. R. W. HILL, Curator.

Milkie, whose domicil was in Vicksburg, gave the plaintiff, his slave, in April, 1848, the following permit: "My negro woman Sarah Haynes, about thirty years old, has permission to pass unmolested to Cincinnati and the State of Ohio generally, or any other free State she may choose." *By the Court.* Her passage was provided for by her master, and she was sent to Cincinnati for the purpose of being made free. It does not appear that she remained longer than several days in Cincinnati, and she came to New Orleans in the same spring. The testimony shows that she has remained here since, with this exception, that in 1844, or 1845, she went to Vicksburg. We infer that she remained there but a short time. As the plaintiff has violated the law by coming into and remaining in this State in direct disobedience of its provisions, she cannot be considered as having acquired any rights, dependent on domicil or residence here, and her status must be determined by the laws of the domicil of her master. We cannot distinguish this case from that of *Hinds* v. *Brazealle*, 2 Howard's (Mississippi) Rep. 841; *Mary* v. *Brown*, 5 A. 271. On the principles recognized by this Court in *Liza* v. *Puissant*, 7 Annual, 83, the plaintiff would not be considered as having acquired her freedom by her presence in Cincinnati.

APPEAL from the First District Court of New Orleans, *Lea*, J. *Tappan*, for plaintiff, cited: *Arsene* v. *Pigneguy*, 2 A. 621; *Eugénie* v. *Preval*, 2 A. 181; *Josephine* v. *Poultney*, 1 A. 324; *Smith* v. *Smith*, 13 L. R. 444; *Marie Louise* v. *Marot*, 9 L. R. 475; *Frank* v. *Powell*, 11 L. R. 500; *Thomas* v. *Genens*, 16 L. R. 483; *Liza* v. *Puissant*, 7 A. 83; *Lumsford* v. *Coquillon*, 2 N. S. 403; *Blackman* v. *Powell*, 7 Yerger, 452.

*Marr*, for defendant. It is evident that *Sarah* did not go to Cincinnati with the intention of remaining; and as the Court decided in *Liza* v. *Puissant*, 7 A. 83, it would require such intention to operate the freedom of the slave under the laws of Louisiana. See also *Jane* v. *Carsoro*, Opinion Book 22, p. 196.

But the *status* of the slave must be tested by the law of Mississippi, where the owner resided, and where the writing under which she claims her freedom, was executed. The law of that State forbids the emancipation of slaves otherwise than by an instrument in writing duly proved or acknowledged, and proof

to the General Assembly of some meritorious act by the slave, followed by an Act of the General Assembly, sanctioning the emancipation, and a compliance by the owner with the conditions imposed by that Act. Hutchinson's Code, p. 523, No. 75.

It has been decided by the Supreme Court of Mississippi, that a deed of emancipation, executed in Ohio by the master, who went there with his slaves for that purpose, and afterwards returned to Mississippi with the slaves, was in fraud of the laws of Mississippi, and totally void, although the master recited in his will the fact that he had executed such a deed, and declared his intention to ratify it, and acknowledged one of the slaves to be his son. *Hinds* et al. v. *Brazealle* et al., 2 Howard's Miss. Rep. 841, 42, 43. If all these solemnities were in vain because they were in contravention of a law established for wise purposes of public policy, surely a mere *permit* to go to a free State, cannot be more effectual.

The true rule is laid down in the case of the *Slave Grace* 2 Hagg, Adm. Rep. 94, and, although more liberal views once prevailed in Louisiana, we have been compelled to return to the English doctrine. The slave who goes, by the permission of his master, to a free State, does not thereby become free. He merely ceases to be subject to the coercion of his master, so long as he remains in free territory; but the moment he returns *voluntarily* to his master's domicil he is again subject to his authority, and resumes his former condition. Act 1846, p. 163.

EUSTIS, C. J. The defendant is the guardian of *Constance Mielkie*, a minor under the age of puberty, appointed by a Court of competent jurisdiction, in Galveston county, Texas, where the parties reside.

The plaintiff, a negro woman, sues the defendant for her freedom. The judgment of the District Court is in favor of the defendant, and the plaintiff has taken this appeal.

The minor is the legitimate child of *Edward C. Mielkie*, whose domicil and residence were in Vicksburg, Mississippi; he died there in February, 1846.

It is proved that the plaintiff, who was the slave of *Mielkie*, left his service in April, 1843, for Cincinnati, in Ohio, under the following permit:

"My negro woman, *Sarah Haynes*, about thirty years old, has permission to pass unmolested to Cincinnati and the State of Ohio generally, or any other free State she may choose.        [Signed]        EDWARD C. MIELKIE."

Her passage was provided for by her master, and she was sent to Cincinnati for the purpose of being made free. It does not appear that she remained longer than several days in Cincinnati, and she came to New Orleans in the same spring. The testimony shows that she has remained here since, with this exception, that in 1844 or 1845, she went to Vicksburg. We infer that she remained there but a short time.

As the plaintiff has violated the law by coming into and remaining in this State, in direct disobedience of its provisions, she cannot be considered as having acquired any rights dependent on domicil, or residence here. *Jane Ross* v. *Andrew Carson*, 7th Annual. Her status must be determined according to the laws of the domicil of her master. We cannot distinguish this case from that of *Hinds* v. *Brazealle*, 2d Howard's (Mississippi) Reports, 841, and *Mary* v. *Brown*, 5 Annual Reports, 271.

On the principles recognized by this Court in *Liza* v. *Puissant*, 7th Annual Rep. 83, the plaintiff would not be considered as having acquired her freedom by her presence in Cincinnati.

The judgment of the District Court is, therefore, affirmed with costs.